**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

vs.                                                                   Case No.: 3:09-cr-79(S1)-J-34JRK

**CLIFFORD B. WILBUR**

_____

**O R D E R**

      **THIS CAUSE** is before the Court on Defendant Clifford B. Wilbur's Motion to Suppress and Citation of Authority (Doc. No. 68; Motion to Suppress), filed on January 5, 2010. The government opposes Defendant's Motion to Suppress. See United States' Memorandum Opposing Defendant Clifford Wilbur's Motion to Suppress (Doc. No. 70; Response to the Motion), filed January 8, 2010. The Motion to Suppress was referred to the Honorable James R. Klindt, United States Magistrate Judge, to conduct an evidentiary hearing and recommend an appropriate resolution. Accordingly, the Magistrate Judge held an evidentiary hearing on January 20, 2010, see Minute Entry (Doc. No. 74; Motion Hearing), and on February 2, 2010, entered a Report and Recommendation (Doc. No. 75; Report) recommending that the Motion be denied. See Report at 27. Thereafter, Defendant filed objections to the Report, see Defendant Clifford Wilbur's Objections to the Magistrate Judge's Report and Recommendation Denying Defendant's Motion to Suppress (Doc. No. 76; Objections), and the government responded, see United States' Response to Defendant Clifford Wilbur's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 77; Response to the Objections). Accordingly, this matter is ripe for review.

**I.     Background**

On May 6, 2008, Deputy Russell Martin was on patrol duty in the King Street area of St. Johns County. See Transcript of Testimony & Proceedings (Doc. Nos. 84-85; Tr.) at 14-15. While on patrol, Deputy Martin observed a tan Mazda 626 (the Vehicle) with "extremely dark tinted windows." Id. at 16. Because Florida law prohibits window tinting below a certain visible light range, Deputy Martin followed the Vehicle and ultimately executed a traffic stop. Id. at 17, 20-21; Fla. Stat. §§ 316.2953, 316.2954. Defendant was the driver of the Vehicle. Tr. at 15-16. During the stop, Deputy Eugene Tolbert[1] and Deputy George Stephen Gazdick, as well as other deputies from the St. Johns Sheriff's Office, arrived at the scene. Id. at 15. Deputy Gazdick deployed K-9 Aron to conduct a sniff of the exterior of the Vehicle, id. at 35-37, and the canine alerted to the odor of narcotics, id. at 172-73. As such, Deputy Tolbert conducted a search of the interior of the Vehicle, id. at 118-19, and discovered a bottle containing a substance which yielded a positive field test result for crack cocaine. Id. at 39. Thereafter, Defendant was arrested. Id.

Defendant filed the instant Motion to Suppress requesting that the Court suppress the items seized in the search of the Vehicle and any fruits of the search. See Motion to Suppress at 7. In the Motion to Suppress, Defendant argues that Deputy Martin stopped Defendant without probable cause or a reasonable suspicion of criminal activity. Id. at 2-3. Specifically, Defendant contends that Deputy Martin did not possess a tint meter at the time

---

[1]     At present, Eugene Tolbert is a Detective. However, at the time of the stop leading to Defendant's arrest, Detective Tolbert was a Deputy. Accordingly, the Court will refer to him as Deputy Tolbert.

-2-

he stopped the Vehicle, and thus did not have a legal basis for stopping Defendant. Id. at 5. In addition, Defendant asserts that the deputies did not have a warrant to search the Vehicle and that probable cause did not exist because the canine sniff of the Vehicle was conducted by an unreliable canine. Id. at 4. Finally, Defendant argues that the search exceeded the scope of the stop in that Deputy Martin unreasonably prolonged the traffic stop in order to allow enough time for Deputy Gazdick and K-9 Aron to arrive and conduct the sniff. Id. at 5-7.

In its Response to the Motion, the government contends that Deputy Martin had reasonable suspicion to stop Defendant's Vehicle because "Florida law allows a deputy to stop a vehicle in instances where the deputy believes that the vehicle's window tint is too dark." Response to the Motion at 3-4. Additionally, the government maintains that Deputy Gazdick arrived and conducted the sniff before Deputy Martin finished performing routine computer checks and filling out the warning citation, id. at 5-6, and that Deputy Martin did not "prolong the stop or delay the performance of his duties during the stop to wait for the canine officer." Id. at 5. As such, the government argues that the sniff was conducted within the reasonable scope of the initial traffic stop. Id. at 5-6. Last, the government maintains that K-9 Aron is a properly qualified drug sniffing dog. Id. at 7-8. Accordingly, the government asserts that the canine's positive alert to the presence of illegal narcotics in the Vehicle established probable cause, such that the deputies could properly search the Vehicle as permitted by the automobile exception to the warrant requirement. Id. at 6-8.

On January 20, 2010, Judge Klindt held a hearing on these matters during which Deputy Martin, Deputy Tolbert, Deputy Gazdick (the Deputies) and Defendant testified. See Tr. at 3. Additionally, the Magistrate Judge received exhibits into evidence. See id. The Deputies' testimonies are consistent with a version of events where, as Deputy Martin was properly carrying out the traffic stop without delay, Deputy Gazdick arrived on the scene and conducted the sniff of the vehicle. Id. at 20-23, 30-37; 108-15; 117-20; 169-74. In stark contrast, Defendant testified that Deputy Martin prolonged the stop, delayed issuing the citation, and instead of sitting in his car performing the computer checks and drafting the citation, Deputy Martin stood outside his car and talked to the other deputies on the scene as they waited for Deputy Gazdick to arrive with the canine. Id. at 192-209.

Following the evidentiary hearing, the Magistrate Judge entered a Report in which he credits the testimony of the Deputies over that of the Defendant. See Report at 18-19. In the Report, Judge Klindt first determines that the initial stop of the Vehicle was lawful in that Deputy Martin had probable cause to believe that the window tinting violated Florida law. Id. at 20-21. Moreover, Judge Klindt finds not only that Deputy Martin did have a tint meter in his possession when he stopped the Vehicle, but that even if he had not, the stop was lawful because a tint meter reading is not required to establish probable cause. Id. at 22-23. In addition, Judge Klindt determines that the sniff of the Vehicle was conducted before Deputy Martin completed routine computer checks and issued the warning citation, and that Deputy Martin did not impermissibly prolong the stop. Id. at 24. Thus, the Magistrate Judge concludes that the sniff was properly conducted while the Vehicle was lawfully seized and that K-9 Aron's positive alert gave the Deputies probable cause to

search the Vehicle pursuant to the automobile exception to the warrant requirement.[2] Id. at 25-26. Accordingly, Judge Klindt recommends that this Court deny the Motion to Suppress. Id. at 27.

**II.     Summary of the Arguments**

Although Defendant raises a number of arguments in his Motion to Suppress, his objections are limited to the contention that the sniff was conducted outside the scope of the initial traffic stop because Deputy Martin impermissibly prolonged the stop. See generally Objections. Specifically, Defendant objects to the Magistrate Judge's factual findings regarding the events that took place during the course of the May 6, 2008 traffic stop. See id. at 1-2. Defendant argues that the version of events Defendant testified to at the Motion Hearing is the correct one, and that the Magistrate Judge erred by crediting the testimony of the officers over that of the Defendant. Id. Defendant maintains that Deputy Martin unreasonably prolonged the traffic stop because he had to wait for Deputy Tolbert to arrive with the tint meter before he could test the tint on the windows. Id. at 2; see Tr. at 198-200. Additionally, Defendant asserts that Deputy Martin engaged in conversations with the other officers present at the scene and was not continuously working on the warning ticket for the illegal tint or waiting on the Defendant's background check. Objections at 2; Tr. at 202, 205.

---

[2] Defendant's argument that K-9 Aron was unreliable was resolved by a stipulation of the parties during the suppression hearing. See Tr. at 97-99; 156-57; Report at 11-12. Specifically, the parties stipulated that K-9 Aron was properly trained, reliable and otherwise a qualified drug trained canine at the time it conducted the sniff of Defendant's Vehicle, and that Deputy Gazdick was a properly qualified drug canine handler and deployed K-9 Aron in a proper manner. Tr. at 156-57.

Moreover, Defendant contends that the "deputies engaged in a systematic manipulation of facts of this case." Objections at 3. In support of this argument, Defendant states that the Deputies have extensive knowledge concerning the law regarding suppression in automobile stops. Id. Defendant asserts that the Deputies used personal cell phones rather than "the official communications of the St. John's Sherriff's [sic] Office" in order to deny Defendant "an adequate means of determining their arrival at the scene of the stop." Id. Finally, Defendant points to the fact that Deputy Mickler, a deputy who was aware at the time that Defendant may have been involved in narcotics, was present at the scene during the search. Id. As such, Defendant concludes that "the officers in question have learned to conform the facts of the stop to current law" and testified in accordance with "current case law rulings." Id. at 3-4.

In response to Defendant's specific objections, the government argues that the Court must defer to the Magistrate Judge's "determination in evaluating the factual version of events on a motion to suppress evidence, unless the Magistrate Judge's version of the facts appears to be 'unbelievable.'" See Response to the Objections at 2. The government maintains that the Magistrate Judge's credibility findings are correct. In support of Judge Klindt's decision regarding what testimony to credit, the government points to Defendant's prior felony convictions, the lack of evidence supporting Defendant's assertions, and the Magistrate Judge's observation of the witnesses' demeanor. Id. at 3. In addition, the government states that the Deputies' use of their cell phones to communicate with each other is done for efficiency purposes, and because it is known that individuals in the area where the Deputies were patrolling often use police scanners to monitor the police radio.

Id. at 4. As such, the government argues that there is nothing in the record to suggest that the Magistrate Judge's credibility findings were "in any way inappropriate." Id.

## III. Standard of Review

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). In deciding whether to reject or accept the magistrate judge's recommendations, a district judge "is not limited to a clearly erroneous standard as [the appeals court is] in [its] appellate review of facts found by the district courts." Louis v. Blackburn, 630 F.2d 1105, 1110 (5th Cir. 1980)[3] (alteration added); but see Ballard v. Comm'r of Internal Revenue, 429 F.3d 1026, 1031 (11th Cir. 2005) (per curiam).[4] Instead, a district judge retains the power "to hear additional testimony or the same testimony all over again if [she decides] that [it] would be beneficial in determining the motion." United States v. Marshall, 609 F.2d 152, 154 (5th Cir. 1980) (alteration added); United States v. Raddatz, 447 U.S. 667, 680 (1980) ("[A district judge's] broad

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[4] In Ballard the Eleventh Circuit states that "[a] district court must defer to a magistrate's findings unless the magistrate's understanding of facts is entirely unreasonable." Ballard, 429 F.3d at 1031. To the extent Ballard conflicts with Blackburn and United States v. Marshall, 609 F.2d 152, 154 (5th Cir. 1980), the Court notes that "where two prior panel decisions conflict" the Court is "bound to follow the oldest one." Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000). Regardless, the Court need not resolve this conflict because the undersigned will accept the Magistrate Judge's credibility determinations. As set forth below, the Court can discern no basis in the record to doubt Judge Klindt's findings, much less to suggest that the findings are "entirely unreasonable."

-7-

discretion includes hearing the witnesses live to resolve conflicting credibility claims."); see also Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1251 (11th Cir. 2007) ("[T]he district court may, if it so chooses, conduct its own hearing as a prelude to making a new determination."). However, if a district court elects to reject a magistrate judge's credibility determinations on critical fact issues, the court must first rehear the disputed testimony. Louis, 630 F.2d at 1110; United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam); see also Amlong & Amlong, P.A., 500 F.3d at 1250 ("[A] district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings."). Indeed, only in the "rare case" where "'there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis . . . [is] articulated by the district judge'" may the district court reject the credibility findings without rehearing the witness testimony. Cofield, 272 F.3d at 1306 (quoting Marshall, 609 F.2d at 155); Amlong & Amlong, P.A., 500 F.3d at 1250. In contrast, "a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings." Cofield, 272 F.3d at 1305 (emphasis added) (citing Raddatz, 447 U.S. 667, 675-76). With regard to legal conclusions, of course, the district court always retains the obligation to review the magistrate judge's legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14, 2007).

## IV.     Discussion

Upon review of Defendant's Objections and the record in this case, the Court will accept the Magistrate Judge's credibility findings. Judge Klindt rejects Defendant's testimony where inconsistent with that of the Deputies' in light of: (1) Defendant's past felony convictions, (2) the internal inconsistencies in Defendant's own testimony, and (3) the lack of corroborating evidence supporting Defendant's version of events. Report at 18. Additionally, Judge Klindt states that "[a]fter hearing the testimony of the witnesses, observing their demeanor, and considering the other evidence, the undersigned credits the testimony" of the Deputies. Id. at 18-19. After de novo review of the transcripts and evidence in this case, the undersigned accepts Judge Klindt's findings, and determines that an additional evidentiary hearing would not be beneficial in resolving the instant Motion. Moreover, the Court finds no merit in Defendant's argument that the Deputies altered their testimony to conform with their knowledge of the law.[5] Defendant offers no evidence in support of this contention, and the unsupported assertions in the Objections do not undermine the Court's confidence in the Magistrate Judge's credibility determination.

In consideration of the foregoing, after de novo review of those matters in the Report to which the Defendant properly objected, the Court finds that the objections are due to be

---

[5] Indeed, "[t]he key to the [exclusionary] rule's effectiveness as a deterrent lies, . . . in the impetus it has provided to police training programs that make officers aware of the limits imposed by the fourth amendment and emphasize the need to operate within those limits." United States v. Leon, 468 U.S. 897, 919 n.20 (1984) (quoting Israel, Criminal Procedure, the Burger Court, and the Legacy of the Warren Court, 75 Mich. L. Rev. 1319, 1414 n. 396 (1977)). Defendant's attempt to use the very training encouraged by the exclusionary rule against the deputies with absolutely no factual support for his scandalous conclusion is not well taken.

overruled.[6]  In addition, after independent review of the record and de novo review of the legal conclusions, including those to which Defendant did not specifically object, the Court agrees with the Magistrate Judge's determinations and will adopt the Report as the opinion of this Court.  Accordingly, it is

**ORDERED**:

1. Defendant's Objections to the Report and Recommendation (Doc. No. 76) are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. No. 75) is **ADOPTED** as the opinion of the Court.

3. Defendant's Motion to Suppress and Citation of Authority (Doc. No. 68) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, on April 7, 2010.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

---

[6] To the extent Defendant objects to what he interprets as the Magistrate Judge's imposition of a "hard and fast rule that prescribes a length of time for a traffic stop," the Court finds that this is an incorrect interpretation of the Report. See Objections at 1-2; Report at 24 n.25. Judge Klindt noted that despite the factual differences between the officers' testimony and Defendant's, even in Defendant's version of the stop, he was only detained twenty-five minutes prior to the sniff. Report at 24 n.25. This statement does not stand for the proposition that all traffic stops lasting no more than twenty-five minutes are presumptively reasonable. Indeed, the Magistrate Judge stated that "'rigid time limitations and bright-line rules are generally inappropriate.'" See Report at 23 (quoting United States v. Purcell, 236 F.3d 1274, 1279 (11th Cir. 2001)). Rather, Judge Klindt's finding that the sniff was not unlawful is based on his determination that Deputy Martin did not impermissibly prolong the stop and "the sniff of the Vehicle was conducted before Deputy Martin completed routine computer checks and issued the warning citation." See Report at 24-25.

lc11

Copies to:

Counsel of Record